## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CLOUDING IP, LLC | |
| Plaintiff, | |
| v. | C.A. No.:   13-01455-LPS |
| EMC CORPORATION, EMC INTERNATIONAL U.S. HOLDINGS, INC. and VMWARE, INC. | **REDACTED PUBLIC VERSION** |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS EMC CORP.,
EMC INTERNATIONAL U.S. HOLDINGS, INC. AND VMWARE, INC.'S
MOTION TO DISMISS FOR LACK OF STANDING**

*Of Counsel:*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Chris R. Ottenweller
Karen G. Johnson-McKewan
Bas de Blank
Monte M. F. Cooper
Stacey E. Stillman
Jason K. Yu
1000 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 614-7400

Paul T. Dacier
Krishendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA  01748

Angela L. Padilla
Jessica W. Rossman
VMWARE, INC.
3401 Hillview Avenue
Palo Alto, CA 94304

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for EMC Corp., EMC International U.S. Holdings, Inc. and VMware, Inc.*

# TABLE OF CONTENTS

**Page No**.

I.  NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.  SUMMARY OF ARGUMENT..........................................................................................1

III.  STATEMENT OF FACTS RELATING TO STANDING....................................................2

    A.  ███████████████████████████████████████████ ████████████████████████.............................................................2

    B.  CLOUDING IP LACKS MANY RIGHTS. ...............................................................5

IV.  LEGAL STANDARDS......................................................................................................7

    A.  RULE 12(B)(1)....................................................................................................7

    B.  STANDING IN PATENT CASES. ...........................................................................8

V.  ARGUMENT .................................................................................................................10

    A.  CLOUDING IP LACKS MANY KEY RIGHTS ASSOCIATED WITH PATENT OWNERSHIP........10

    B.  LABELING THE PPA AN "ASSIGNMENT" DOES NOT CONFER STANDING. .......................15

    C.  BECAUSE CLOUDING IP LACKS ALL SUBSTANTIAL RIGHTS IN THE PATENTS, IT CANNOT PURSUE THIS SUIT. .........................................................................................16

VI.  CONCLUSION ..............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Diamedix Corp.*,
   47 F.3d 1128 (Fed. Cir. 1995)........................................................................ 11, 12, 13, 14

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010).................................................................................*passim*

*Ballentine v. United States*,
   486 F.3d 806 (3d Cir. 2007) ...................................................................................................7

*Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*,
   165 F.3d 221 (3d Cir. 1998) ...............................................................................................7, 8

*Fieldturf v. Sw. Recreational Indus.*,
   357 F.3d 1266 (Fed. Cir. 2004).............................................................................................15

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*,
   248 F.3d 1333 (Fed. Cir. 2001).................................................................................. 9, 14, 15

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007).................................................................................. 7, 8, 10

*Petruska v. Gannon Univ.*,
   462 F.3d 294 (3d Cir. 2006) ...................................................................................................7

*Pfizer Inc. v. Elan Pharm. Research Corp.*,
   812 F.Supp. 1352 (D. Del. 1993) .........................................................................................13

*PrimaTek II, L.L.C. v. A-Roo Co.*,
   222 F.3d 1372 (Fed. Cir. 2000)................................................................................... 9, 11, 12

*Propat Int'l. Corp. v. Rpost*,
   473 F.3d 1187 (Fed. Cir. 2007)................................................................................... 11, 12, 13

*Raber v. Pittway Corp.*,
   23 U.S.P.Q. 2d 1313 (N.D. Cal. 1992)
   *aff'd mem.*, 996 F.2d 318 (Fed. Cir. 1993) .........................................................................14

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005)........................................................................... 7, 8, 9, 13

*Waterman v. McKenzie*,
   138 U.S. 252 (1891) .................................................................................................. 2, 9, 14

**Statutes**

35 U.S.C. § 281.................................................................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1)............................................................. 1, 2, 7

Federal Rule of Civil Procedure 12(b)(6)..................................................................7

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants EMC Corp., EMC International U.S. Holdings, Inc. and VMware, Inc. ("Defendants") have moved to dismiss the Complaint on the ground that Plaintiff Clouding IP, LLC ("Clouding IP") lacks standing because it did not obtain all substantial rights in the patents-in-suit from Symantec Corp. ("Symantec").

II.     **SUMMARY OF ARGUMENT**

The transaction between Clouding IP and Symantec is anything but a conventional sale of patents.   Clouding IP and Symantec ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Clouding IP contends that under the Patent Purchase Agreement Symantec transferred to Clouding IP all right, title and interest in the asserted patents, but an examination of the agreement tells a far different story. ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████

In its responses to the Amazon and Google motions to dismiss, Clouding IP argued that its standing to sue is unassailable because the Patent Purchase Agreement refers to a transfer of ownership.  But cases are legion — going back to Supreme Court precedent more than 100 years

old — that standing depends on the substance of rights transferred and retained, not the labels parties may attach to their transaction. *See, e.g., Waterman v. McKenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.") (emphasis omitted).

Thus, in resolving the threshold issue of subject matter jurisdiction, the Court must look beyond Clouding IP's characterization and ascertain the true nature of what was conveyed to Clouding IP, and what was not. Clouding IP bears the burden of establishing that it has "all substantial rights" in the asserted patents. Given the multiple encumbrances on its rights, and the key ownership rights it never received, Clouding IP cannot satisfy that burden. Pursuant to Federal Rule of Civil Procedure 12(b)(1), its case should be dismissed because the Court lacks subject matter jurisdiction.

## III.   STATEMENT OF FACTS RELATING TO STANDING.

### A.   The Enterprise Is Designed To Give Symantec Substantial Control Over The Enforcement Of The Patents.

Clouding IP is a non-practicing entity formed for the sole purpose of bringing patent infringement lawsuits. It has no commercial business, makes no product, renders no services, and contributes nothing to the economy by way of innovation. Clouding IP entered into █ █████ with Symantec, an Internet security and anti-virus software company, ███ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ███████[1]

---

[1]   An entity called IP Navigation Group, LLC ("IPNav"), a large patent aggregator, is working behind the scenes as the licensing agent for Clouding IP. According to an article in the *New York Times*, IPNav's business is to create and finance patent assertion entities.



---

*See* Ex. A at 1, 4.  The extent of IPNav's financial interest in the Clouding IP cases is unknown because both Clouding IP and IPNav have refused to provide discovery on this issue.

2 ████████████████████████████████████████████████STEC IP subsequently changed its name to Clouding IP.  This motion assumes, without conceding, that Symantec Corporation and/or Symantec International owned all rights in the patents-in-suit before February 2012.



Clouding IP and Symantec ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ did record a Patent Assignment Agreement with the United States

Patent Office purportedly summarizing their transaction.[3] █████████████████████

████████████████████ For example, paragraph 6 the Patent Assignment Agreement recites

that Clouding IP is to receive "*all* Income, royalties, damages and payments now or hereafter due

or payable" with respect to the assigned patents, suggesting this was an outright sale.  Ex. B at

CLI_003954, Patent Assignment Agreement, ¶ 6 (emphasis added).  █████████████████

██████████████████████████████████████████████████████████

████████████████████████████ The Patent Assignment Agreement also █████████████

████████████████████████

**B.**      **Clouding IP Lacks Many Rights.**

Given the structure of the enterprise, there are multiple rights a patent owner would

possess that Clouding IP simply does not have.  These rights are described in the motions to

dismiss that Amazon and Google filed, but we list them here for the convenience of the Court.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

---

[3]      ████████████████ the Patent Assignment Agreement is actually between Symantec
entities and STEC IP, which subsequently changed its name to Clouding IP.





## IV.   LEGAL STANDARDS

### A.   Rule 12(b)(1).

Issues of standing are properly raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Ballentine v. United States.*, 486 F.3d 806, 810 (3d Cir. 2007). A Rule 12(b)(1) challenge to subject matter jurisdiction can be "facial" or "factual." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). In a "facial" attack, the Court treats the allegations of the complaint as true, much like a Rule 12(b)(6) motion. *Id.* In a "factual" attack, however, the Court is free to consider matters outside the pleadings and weigh the evidence. *Id.* When a plaintiff's standing is challenged, it is plaintiff's burden to prove standing, not a defendant's burden to disprove it. *Id.* ("Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."). *Accord Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("The party bringing the action bears the burden of establishing that it has standing.").

7

### B.    Standing in Patent Cases.

"Standing is comprised of both constitutional and prudential components."  *Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 225 (3d Cir. 1998).  Constitutional standing requires that the plaintiff demonstrate that it suffered "injury in fact" that is "fairly traceable" to the defendant's conduct and likely to be redressed by a favorable decision.  *Id.*; *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338-39 (Fed. Cir. 2007).  In addition, "[u]nder certain circumstances, prudential, as opposed to constitutional, standing considerations limit a plaintiff's ability to bring suit."  *Conte Bros.*, 165 F.3d at 225.

In the patent context, constitutional standing exists by virtue of the statutory grant of the legal right to exclude others from making, using, and selling a patented invention.  *Morrow*, 499 F.3d at 1339.  Only those who hold all rights or "all substantial rights" in a patent can sue in their own name:

> There are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits: those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit. ***The first category includes plaintiffs that hold all legal rights to the patent as the patentee or assignee of all patent rights—the entire bundle of sticks. . . . When a party holds all rights or all substantial rights, it alone has standing to sue for infringement***.

*Id.* at 1339-40 (emphasis added); *see also Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010) ("When a sufficiently large portion of this bundle of rights is held by one individual, we refer to that individual as the owner of the patent, and that individual is permitted to sue for infringement in his own name.").  The Federal Circuit has defined "all substantial rights" as those rights "sufficient for the licensee or assignee to be 'deemed the effective patentee under 35 U.S.C. § 281.'"  *Sicom,* 427 F.3d at 976.  Where a plaintiff holds ***some*** exclusionary rights but not all substantial rights to the patent, "these

exclusionary rights must be enforced through or in the name of the owner of the patent, and the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns." *Morrow*, 499 F.3d at 1340 (internal quotations omitted).

Because "[a] patent is 'a bundle of rights which may be divided and assigned, or retained in whole or in part,'" courts must scrutinize each particular agreement to determine whether it conveys all substantial rights under a patent so as to effect a transfer of title in the patent. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal.*, 248 F.3d 1333, 1342-44 (Fed. Cir. 2001); *see also PrimaTek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed. Cir. 2000) ("To determine whether a license agreement has conveyed all substantial rights in a patent, and is thus tantamount to an assignment, we must ascertain the intention of the parties and examine the substance of what was granted. . . . In so doing, it is helpful to look at what rights were retained by the grantor.").

The title of the agreement, whether it is called a "license" or an "assignment," "is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination." *Intellectual Prop. Dev.*, 248 F.3d at 1344; *see also Waterman*, 138 U.S. at 256 ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.") (emphasis omitted). Moreover, standing must exist at the time of filing of the complaint. *Sicom,* 427 F.3d at 975-76. Accordingly, the Court should "weigh[] the rights in the [patents in suit] transferred to [Clouding IP] against those retained by [Symantec] to determine whether [Symantec] assigned all substantial rights in the [patents-in-suit] to [Clouding IP] or conveyed fewer than all such rights." *Intellectual Prop. Dev.*, 248 F.3d at 1344.

9

In determining whether a plaintiff has obtained "all substantial rights" in a patent, the courts examine how the parties to a transaction have divided up the bundle of rights in the patents in suit.  In *Alfred E. Mann,* 604 F.3d at 1354, 1360-61, the Federal Circuit listed many of the rights that must be examined, including:

- The exclusive right to make, use, and sell products under the patent;

- The right to sublicense;

- The circumstances in which the rights revert to the purported assignor;

- The right of the purported assignor to receive a portion of the royalties;

- The ability of a purported assignor to supervise and control the purported assignee's activities; and

- Restrictions on the assignee's right to sell or transfer the patents.

## V.   ARGUMENT

Of the three categories of plaintiffs identified in *Morrow*, 499 F.3d at 1339-40, Clouding IP falls into the first: a party that sues in its own name claiming to possess "the entire bundle of sticks."  But Clouding IP can make no credible claim that it possesses all rights in the patents-in-suit.  Among other things, it does not have the full right to ███████████████████████ ███████████████████████████████████████████████████████████████████████ ████████.  Therefore, the issue is whether Clouding IP can demonstrate that it possesses "all substantial rights" in the patents, a high standard to meet.  As demonstrated below, Clouding IP cannot satisfy its burden.

### A.      Clouding IP Lacks Many Key Rights Associated with Patent Ownership.

Where parties have divided up the bundle of rights in patents asserted in litigation, Federal Circuit precedent teaches that it is necessary to dissect the transaction to determine which rights the plaintiff possesses in full, which rights the plaintiff lacks, and which rights are

shared with the purported assignor.  In the following chart we summarize the results of that dissection in this case.

### How the Bundle of Rights Was Divided Up

| Right | Division | Support |
|---|---|---|
| **Right to sell or transfer patents**<br><br>*See Propat Int'l. Corp. v. Rpost,* 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant Propat all substantial rights under the patent."). | ██████████████████████<br>████████████████ ███<br>███████████████████<br>██████████ | ████████ |
| **Exclusive right to practice the patents**<br><br>*See Alfred E. Mann*, 604 F.3d at 1360 ("[T]ransfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment."); *PrimaTek II*, 222 F.3d at 1379-80 ("In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory.") (emphasis in original). | ███████████████████████<br>████████████████████<br>███████████████████<br>████████████████████<br>███████████████████ Clouding IP makes no products or services. | ████████████ |

| Right | Division | Support |
|---|---|---|
| **Right to indulge infringement**<br><br>*See Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) ("[T]he right to indulge infringements . . . normally accompanies a complete conveyance of the right to sue."). | ██████████████ | ██████ |
| **Right to license the patents**<br><br>*See Prima Tek II,* 222 F.3d at 1380 ("A licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights."). | ██████████████ | ████ |
| **Right to collect royalties**<br><br>*See Alfred E. Mann*, 604 F.3d at 1360-61 (noting the right "to receive a portion of the recovery in infringement suits" is among the "rights that should be examined" in determining ownership). | ██████████████ | ██████ |
| **The reversionary right to terminate Clouding IP's involvement**<br><br>*See Propat Intl'l Corp.,* 473 F.3d at 1191-92 ("Authentix's power to terminate the agreement and end all of Propat's rights in the patent if Propat fails to perform up to the specified benchmarks, although not dispositive, is yet another indication that Authentix retains a significant ownership interest in the patent."). | ██████████████ | █████ |

| Right | Division | Support |
|-------|----------|---------|
| **Obligation to pay patent maintenance fees**<br><br>*See Alfred E. Mann*, 604 F.3d at 1360-61. | ██████████████ | ████████ |

When Clouding IP's position is analyzed under Federal Circuit precedent, it is clear that its package of rights does not rise to the level of all substantial rights.  In *Abbott*, for example, the Federal Circuit held that Abbott was not an assignee where Diamedix, the purported assignor, retained rights to practice the patents for its own benefit, to prosecute its own infringement action if Abbott declined to do so, and to prevent Abbott from assigning its rights under the agreement to anyone other than a successor.  47 F.3d at 1132.  ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████

In *Sicom* the Federal Circuit affirmed this Court's (Farnan, J.) holding that plaintiff Sicom lacked standing because it had not received all substantial rights in a transaction with the Government of Canada.  427 F.3d at 978-80.  Among the rights Canada retained in the transaction were the rights to continue practicing the patents, to veto Sicom's disposition of the patents, to grant sublicenses, and to sue for infringement other than commercial infringement. Based on the significant rights retained by Canada, the Federal Circuit affirmed the holding that Sicom had not received all substantial rights.  *Id.*  The Federal Circuit particularly endorsed this Court's holding that the restriction on Sicom's right to sell or transfer the patents was a "fatal reservation of rights by Canada."  *Id.* at 979.

13

A restriction on the right of alienation has lead to other holdings that a plaintiff lacks standing.  For example, in *Propat Int'l. Corp.,* 473 F.3d at 1191, the Federal Circuit noted that the purported licensor ████████████████ could veto decisions by the purported licensee to sell or transfer the patents.  "The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant Propat all substantial rights under the patent."  *Id*.  This Court made a similar ruling in *Pfizer Inc. v. Elan Pharm. Research Corp.,* 812 F.Supp. 1352, 1373 (D. Del. 1993).  Noting that Pfizer could not assign its interests in the patent-in-suit without written permission from Bayer, the Court held that such a restriction was fatal to the argument that Pfizer had obtained all substantial rights. ████████████████████████████████

In *Abbott* the Federal Circuit also cited approvingly to a district court case ██████████ ████████████████████████.  *See* 47 F.3d at 1133 (citing *Raber v. Pittway Corp.*, 23 U.S.P.Q. 2d 1313, 1314-15 (N.D. Cal. 1992)).  In *Raber*, plaintiff Raber asserted that he had obtained "complete title" to the asserted patent from assignor Cerberus under a document recorded with the Patent Office.  23 U.S.P.Q.2d at 1314. ████████████████████████████ ████████████████████████████████ the recorded assignment in *Raber* was subject to an unrecorded side agreement prohibiting Raber from assigning his interest in the patent without written consent from Cerberus; transferring back to Cerberus an irrevocable, royalty-free license with the right to sublicense subsidiaries; and requiring Raber to pay Cerberus one-half of all recoveries under the patent.  *Id.* at 1313-14.  The court concluded that Raber was not the patent owner and lacked standing:

> Because RABER's interests in the Patent are not exclusive [due to Cerberus's retained right to practice the patent] and because RABER does not have the right to assign his interests in the Patent without Cerberus's written permission, Cerberus has not

> transferred to RABER substantially all of its rights in the Patent. Therefore, RABER is a mere licensee, not an assignee, and he does not have standing to sue for infringement . . . .

*Id.* at 1315, *aff'd mem.*, 996 F.2d 318 (Fed. Cir. 1993). █████████████████████████

████████████████████████████████.

### B.    Labeling the PPA an "Assignment" Does Not Confer Standing.

████████████████████████████████████████Supreme Court and

Federal Circuit precedent that warns courts to heed substance over labels in determining whether

an agreement constitutes a patent assignment. *See, e.g.*, *Waterman,* 138 U.S. at 256; *Intellectual*

*Prop. Dev.*, 248 F.3d at 1344. ████████████████████████████████

████████████████████████████████████████████████

███████████████████████████.█████████████████████████████

████████████████████████████████████████████████

In fact, there is only a single inquiry: the one who has or receives all substantial rights is the one

who holds title. *See Alfred E. Mann*, 604 F.3d at 1360 ("When a sufficiently large portion of

th[e] bundle of rights is held by one individual, we refer to that individual as the owner of the

patent . . . ."). Otherwise, there could be two entities with independent standing to sue—the

"title holder" and the "substantial rights holder"—in contravention of prudential standing

doctrine. *See id.* at 1359 ("[A] patent may not have multiple separate owners for purposes of

determining standing to sue.").

Here, the labels in the PPA are entitled to even less weight because the PPA expressly

states that ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████

15

**C.**     **Because Clouding IP Lacks All Substantial Rights in the Patents, It Cannot Pursue This Suit.**

It bears repeating that Clouding IP bears the burden of proving that it possesses all substantial rights in the patents.  *See Fieldturf v. Sw. Recreational Indus.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004) (holding that party asserting standing "has the burden to provide evidence endowing it with all substantial rights in the patent"). ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████  That is the case here.  Because Clouding IP received less than all substantial rights, it cannot meet its burden to establish standing.

**VI.**     **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss this case for lack of subject matter jurisdiction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paul Saindon*
_____
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
*Attorneys for Defendant*

16

*Of Counsel:*

**ORRICK, HERRINGTON & SUTCLIFFE
LLP**
Chris R. Ottenweller
Karen G. Johnson-McKewan
Bas de Blank
Monte M. F. Cooper
Stacey E. Stillman
Jason K. Yu
1000 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 614-7400

Paul T. Dacier
Krishendu Gupta
William R. Clark
Thomas A. Brown
EMC CORPORATION
176 South Street
Hopkinton, MA  01748

Angela L. Padilla
Jessica W. Rossman
VMWARE, INC.
3401 Hillview Avenue
Palo Alto, CA 94304

Dated:  December 20, 2013  - Original Filing Date
        December 27, 2013 - Redacted Filing Date

17

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 20, 2013, upon the following in the manner indicated:

Richard D. Kirk, Esquire                                 *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Clouding IP, LLC*

Marc. A. Fenster, Esquire                                 *VIA ELECTRONIC MAIL*
Dorian S. Berger, Esquire
Brian Ledahl, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
*Attorneys for Clouding IP, LLC*

/s/ Paul Saindon
Paul Saindon (#5110)

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 27, 2013, upon the following in the manner indicated:

Richard D. Kirk, Esquire                              *VIA ELECTRONIC MAIL*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Clouding IP, LLC*

Marc. A. Fenster, Esquire                             *VIA ELECTRONIC MAIL*
Dorian S. Berger, Esquire
Brian Ledahl, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
*Attorneys for Clouding IP, LLC*


*/s/ Paul Saindon*
_____
Paul Saindon (#5110)